REEP *v.* REEP.

4-9499                                        241 S. W. 2d 262

Opinion delivered July 2, 1951.

*Max M. Smith,* for appellant.

*O. E. Gates* and *B. Ball,* for appellee.

GEORGE ROSE SMITH, J. This suit was brought by the appellees, a partnership operating the Rye Gin Company, to obtain an accounting of the company's business for the 1944-1945 ginning season. The defendant is Glynn Reep, who was employed as manager of the cotton gin for the year in dispute. The complaint charges that Glynn handled the firm's receipts and disbursements during the season in question and failed to account for funds amounting to $4,284.84. Glynn's father, J. B. Reep, who was formerly a member of the partnership, filed an intervention asserting that the firm is indebted to him for various advances and capital contributions. After hearings extending over a period of years the chancellor entered a decree which gave the appellees judgments against Glynn Reep totaling about $1,350 and also adjusted the accounts between J. B. Reep and his former partners. The father and son appeal.

The chancellor, in his effort to adjudicate the conflicting claims, was hampered by the fact that only meager records were kept during the year in controversy. Many witnesses testified, and each side employed an accountant to audit the company's books and state the accounts. In many instances the auditors found the records so inadequate that it was necessary to explore outside sources, such as the books of those with whom the ginning company did business. The chancellor found, and we agree, that the testimony and the audits are in irreconcilable conflict. The parties, however, have accepted the chancellor's findings, with the exception of six items now questioned by appellants.

One disputed issue is whether Glynn accounted for the proceeds of an $80.50 check which was payable to the company and cashed by Glynn. Glynn admits cashing the check but says that a few days later he deposited the money in the firm's bank account. His only supporting evidence, however, is a deposit slip which shows that the sum of $100 in currency was deposited. We are not able to say that the chancellor was wrong in doubting that Glynn preserved the $80.50 and added just enough of other company funds to make an even hundred dollars.

It may be added that this was only one of many transactions during the season, and Glynn testified from memory alone after an interval of several years.

Another item is that of interest charged against Glynn, upon the theory that he has been continuously indebted to the partnership. A major part of this debt arises from the chancellor's conclusion that Glynn wrongfully used $1,114 of company funds to buy a car for himself. Glynn admits the transaction, but he explains that the firm then owed his father more than the amount of the withdrawal, and Glynn was sure that his father would not object to Glynn's using the money. Mr. Reep testified that he approved the transaction when he was told about it, but it is not intimated that the other partners knew anything about it. We uphold the chancellor's refusal to sanction what was clearly a misuse of partnership funds. The accounts between J. B. Reep and his partners were still a matter of dispute when this suit was filed, and we cannot approve the action of an employee in assuming to strike a balance for the partners and withdrawing for his personal use funds thought to be due his father.

A third item of $54 was charged to Glynn, but he testified that this money was spent for legal fees and the hauling of cotton. We find no reason for rejecting this testimony, which is not disputed. The judgment against Glynn is reduced to the extent of this item.

A fourth issue centers upon Glynn's personal account with his employers. Here the major contention is that Glynn should be credited with a salary of $130 a month for eight months, or a total of $1,040. The appellees' auditor allowed a salary of $5 a day for 133 days— a total of $665. The appellants attack the auditor's figure, but in doing so they overlook the fact that the chancellor did not accept the auditor's finding. Instead, in his opinion the chancellor allowed a salary of $135 a month for seven months, totaling $945. This allowance is fully as liberal as Glynn is entitled to demand.

Still remaining are (a) other debits and credits to Glynn's personal account with the firm, (b) a controversy

as to the total amount of cotton seed bought and sold during the season, and *(c)* a dispute as to the quantity of cotton seed hulls and meal that were sold. The appellants' abstract is insufficient to enable us to pass upon these issues with the same knowledge the chancellor possessed. These issues can be decided only by a detailed study of the auditor's worksheets, recapitulations, profit and loss statements, etc. These documents consist of about 125 pages, none of which has been abstracted or reproduced by the appellants. It is probably true that the amounts involved would not have justified the cost of reproducing these calculations for our consideration, but without them we are unable to determine the issues without examining the transcript and its exhibits. For the reasons given in *Files* v. *Law,* 88 Ark. 449, 115 S. W. 373, we cannot follow that procedure and at the same time dispatch the other business before the court. From the abstract we conclude that the chancellor analyzed the case patiently, thoroughly, and conscientiously, and with the modification mentioned above his decree is affirmed.